Mr. Berger Good morning and may it please the court, Bill Burgess on behalf of the appellant Mr. Clark I think I've reserved four minutes for rebuttal I'd like to start with Clark's convictions but before I sit down I do hope to say a few words about restitution because we think the issue is important and that an affirmance here would set a dangerous precedent in false statement cases and read the word direct out of the restitution statute but before I get to that first count 10 is the affidavit that was made to a state agency and there's just our argument is there's just insufficient evidence to show that this was material to the federal government. It's an affidavit of compliance that professes Clark's compliance with a state wage order state statutes made to a state agency at the state's agency's request more than a year after Clark's work was complete. There were no witnesses from the federal government who testified at all in this case other than the forensic accountant. There's no mention in the indictment of any federal interest in the state affidavit. The indictment goes on for several pages about the payroll certifications that are counts one through nine and I'll get to that shortly but then just throws in this paragraph at the end that relates to all the all the drivers which is another issue whether they're victims or not but all the drivers other than Mr. Addison and just throws in a paragraph at the end that said oh yes and Clark also certified his compliance with state law and the standard under the Supreme Court has said in the Godin case and there are other cases that we cite in our brief that materiality is a separate element of the offense that must be proven beyond a reasonable doubt and the standard is that it must have a natural tendency to influence or be capable of influencing the decision-making body to which it was addressed and that... Mr. Burgess, was materiality disputed at trial? If I find it, if you're asking did his trial counsel specifically call out materiality as an element that was insufficiently proven then no. Or did or was there evidence offered to counter what government what the government's evidence was that might have been addressed to materiality? I don't think Clark disproved materiality if I'm understanding the question or put on any evidence. The question is did he put on any evidence? He obviously doesn't have to disprove it but... Right, no I don't think... But it's a different story depending on whether we're we've got... No, this is a straightforward sufficiency we're challenging the sufficiency of the government's evidence. I don't think there was any evidence necessarily going the other way that Clark put on that said no this wasn't we didn't fight materiality explicitly with evidence or arguments at the extent of the offense it must be proven and the government simply glossed over that. Well there's this look at the evidence that we've got at least as best I can tell tells us that this was part of the contract eventually they got clear as to what the exact rate was. Mr. Clark behaved as if he understood he was supposed to comply with this requirement and we've got contract provisions that authorized the U.S. to terminate or to sue or to withhold the payments to the contractor that should have gone the amounts that should have gone to the drivers. Given there's no other evidence why isn't all that sufficient to infer that the Department of Labor actually cares about this law? It's a lot packed into that question I'm trying to answer it as directly as I can. I think most of the evidence that you've cited goes to jurisdiction and to falsity. We're not contesting falsity some of the evidence showed that Clark. Why isn't it also relevant to materiality? The question is whether Clark's this specific statements charged in the indictment are material to the federal government. The government's theory of this is that this is a statement about what he's paying his workers and we don't think that section 1001 reaches so broadly as to say that any statement made about the general subject of payment to your workers or even the amounts paid to your workers is material to the federal government. It has to be a specific statement. If the government cares about their wages paid and if he had been truthful and said no I'm not paying the prevailing wages that would have just disappeared into a file cabinet is that the theory? No I mean that I think part of the answer to that question might go to counts one through nine and our point here is just if you look at count 10 this is an affidavit of compliance with state law and it's exclusively state law. It references state statutes. It references a state wage order and there's just no testimony about why the government would have cared about this specific statement. The general point that the government has a general interest in what wages subcontractors pay their workers I think that goes to counts one through nine and I'm going to address that in a moment but we think that I think the test is much more specific than that. It's not just is this about a general subject that the government cares about. But you really haven't cited any case that supports your theory on all fours right? No we haven't. It's just sort of I don't know sort of your take on things what the government's interest might be but there's no real case law to back up this reasoning. And we haven't seen case law going the other way either but I mean I guess our argument relies on general principles. This Winship and Mulaney that you have to prove all elements beyond a reasonable doubt and it's the Supreme Court's Scott N case that says that the materiality is a separate element. I mean just you think this is a straightforward reading of the statute that this is about specific statements to the government and it follows from general principles. Well it sounds to me like you're challenging the Department of Labor. You're that are funded by the federal government. It seems to me you're going to the foundation of the act and the role of the Department of Labor because you're suggesting that you know the federal government really has no real interest and therefore it would not be material to them what happens and what these people are paid. There's a lot packed into that question. I think that's probably a good point to turn to counts one through nine but our point on count 10 is we're not challenging the foundations of the Davis-Bacon Act on that. Or and you're not really challenging the thousand one. No I mean our point on count 10 is just that the statement itself relates solely to state law and there's no evidence tying that specific statement to the federal government other than the general proposition that there's federal funding in the background and the government has a general interest. Your position is the government presented no evidence with regard to this. With regard to count 10. That anybody received this affidavit. Right. They just make the claim that it's false but there's no indication here that the government had tried. Right there's no indication the government asked for it that this was available to the government that anyone cared to show it to the government. Just going to count 10. I understand that's really all our point is on count 10. We think that's fairly straightforward. Counts one through nine. Our main point on that is not that the government has to prove a violation of the Davis-Bacon Act in every case but that this is this is the way the government tried its case. This is the horse the government chose to ride. The indictment talks all about the Davis-Bacon Act and that the requirement of these certified payrolls. The witnesses testified about Davis-Bacon and the district court recognizes its sentencing. We quote a bunch of this in the record but I think the quote that encapsulates it the best might be at A325 page 37. We have an indictment that brings a case under section 1001 for false statement. It's the vehicle for a Davis-Bacon violation and mentions Davis-Bacon in the indictment. The trial was all about Davis-Bacon violations. That's the district court summing up the case of sentencing and the government chose to make this case all about Davis-Bacon Act violations. That was its basis for materiality and the Davis-Bacon Act, it's not a nationwide minimum wage law. It applies under specific circumstances that weren't shown here. The contract refers to a wage determination by the Secretary of Labor and this is the Federal Secretary of Labor. It said which is attached here to and made a part here of. That's the federal rider at A436. There's no dispute that no wage determination by the Secretary of Labor was actually attached to the contract. And there's no testimony... You're talking about back at the time it was issued. Wherever. There was a state wage order. That's the thing referred to in count 10. But Davis-Bacon Act depends on a determination by the Federal Secretary of Labor and there's no testimony about any specific wage order from the Federal Secretary of Labor having existed, having been shown to people. There's some general mention of prevailing wage and that the federal government cares about prevailing wage but there's no evidence in this case about a specific wage order by the Federal Secretary of Labor. Is there anything about the prevailing wage? People do talk generally. Any evidence? It wasn't... Was that presented? About prevailing wage? Yes, there is a number that was testified about. Right. So I guess I'm asking this question on count 10 as well. Do you have any case authority that says that deception like here of a state through false statements in an order, even though the department has a responsibility to ensure prevailing wage was paid with respect to federal highway funds provided under the project, and that it has under that act the direct authority to intervene in the event of prevailing wage violations? If we had a case directly on point, we would have featured it pretty prominently in our brief argument. It proceeds from general principles. So, no, but that's part of my point too. You don't have a case on the other side. Right. Yeah, so... Right. I mean, there seems not to be a lot of case law in this area. I don't mean to be flippant. No, I understand. My direct answer to your question is no, we don't have a case on all fours. Getting close to the time for rebuttal, I do want to say a word about restitution. Well, and I would like you to get to this restitution, the argument that the employees were not victims. Yes. I mean, our point there... There's parts of our brief that make this more complicated than it needs to be. The simple point is the word direct is in the statute. 18 U.S.C. 3663A2 requires direct harm. And this isn't a general principle thing. It says the word, for purposes of this section, the term victim means a person directly and proximately harmed. And then it goes on to talk about scheme, which we think is a bit of a distraction. But even where scheme is an element, and we think it's not here, that person also has to be directly harmed by the defendant's criminal conduct. And you don't think they were directly harmed because they were paid the $15 versus the $35 an hour, or roughly those amounts? Right. Because... Because they would have worked anyway, and they were happy to have the job. It's partially the counterfactual thing, but more importantly, I think, is the fact that Clark was charged with making false statements to the government, not with defrauding his workers or even underpaying his workers. And those false statements may have had indirect effects on third parties, but the statute says, and it's pretty clear that you can only provide restitution when Congress is authorized, the statute says direct. And the government might be trying to get at what it perceives as the harm to third parties, but to bring a charge under false statements is an indirect route to get at that harm, and we think that's just out of bounds under the statute. So under your theory, there is no victim here? If there is any victim, it is the federal government. The statements were made to Congress. But it's not out of pocket any money. Right. It saves money this way. Right. We think the original pre-sentence report was right on this point, that there is no victim entitled to restitution. I mean, to be sure there's other penalties available and there's other statutes, but no victim entitled to restitution under 3663A2, we think that's absolutely right. So would you say that there's no loss or no loss that can be determined? There is no... I'm not sure if you're asking about restitution or sentencing. For purposes of restitution, there's no loss. I mean, there's no evidence of the government is in this position because of Clark's statements, and it would have been in a different position but for those statements. This is quintessentially a financial crime here, right? The facts of this case look like quintessentially a financial crime, but Clark was charged with false statements to the government, not with fraud, not with underpaying his workers, not with stealing, and the government has corrected the last oral argument for calling this stealing from his employees. We think that's the critical distinction. 18 U.S.C. 1001 is a very broad statute. It's charged all the time, and we don't dispute that there are false statements. If it enables you to keep money... We'll not use stealing. We'll say it enables you to keep money you shouldn't be keeping. Why isn't that a direct result? Approximate result, but certainly a foreseeable result of this crime. We don't dispute that it's foreseeable, but the crime... I think the Randall case gets at this a little bit that we cite. That's probably our best case on that, and we cite the court also to footnote four in the Randall case talking about this, but it's indirect because the statements are made to the government. So now it's the government that issues the contract for the road work. I would think that when the contract is negotiated, the government has some view of wages. That's why prevailing wage comes into the game. So what it means is that the contractor gets more money if the employees don't get the prevailing wage. And also two points in response to that. The original pre-sentence report said the government advised the probation office that the federal funds would have been spent regardless of what happened here, and that hasn't been disputed. And the government sits several removes from Mr. Clark. It contracts with this big general contractor, and the general contractor, I suppose, one of the components of the general contractor contracted with Mr. Clark is a sub. Right. We don't dispute the logic. You don't think when a general contractor contracts, at least one of the things they have in mind is what their expenses will be, what the cost of materials might be, what the cost of wages might be, how many employees they might have, how many subs they might have to hire. I'm just trying to get to the sort of the policy reasons as to why there is even this requirement under federally funded projects, and also in terms of the loss. In my rebuttal, I'll just try to answer that directly. We're not disputing that there is a logic that traces the false statements to his employees' pockets, and we're not disputing that the government has a general interest in wage. We're not disputing that the government is generally interested in how much subcontractors are paying their employees, but they have specific statutes that apply in specific circumstances, and any route from Clark's false statements to his employees' loss is indirect, and therefore not properly the subject of restitution under the statute. And if I can, I'd like to say whatever time I've got remaining. Of course. Thank you, Your Honor. Thank you, Mr. Burgess. Mr. Ruppert? Thank you, Your Honor. I'm going to address the question as to whether the federal government would have put all of this stuff in a drawer and gone quietly into the night in face of the fundamental question raised by the appellant as to whether or not the government sufficiently proved that the contract included provisions governing the prevailing wage. There was testimony in the record from April Brown of the Missouri Department of Transportation. I'll refer to Missouri Department of Transportation as MODOT. Concerning a change order, the court will find that in Volume 3, pages 30 to 31. And she says, and so then the actual wage order was established, it was agreed upon, and a change order was then submitted and accepted by the prime contractor. Now there was some dispute in terms of the timing as to when that change order came into effect. April Brown thought it was early 2008. A representative of Gateway Constructors, the prime contractor, thought it was earlier in the summer of 2007. But in any event, the indicted counts of the wage certifications relate to 2009. So whoever was correct, the change order was entered into prior to the wage certifications. One turns to the contract entered into between Gateway Constructors and Clark, and it says Clark, which was admitted as Government Exhibit 51, and I would turn the court's attention to page 8 of that agreement. Where do we find it? It is Government's Exhibit 51. And number paragraph 26 makes it clear, and I will read the first part of it, the agreement document shall consist of this agreement, all attachments to this agreement, the contract, all addenda issued prior to, and all modifications issued after the execution of the contract and or agreement. So as a matter of contract law, that was included. Now the question has also been raised, was it the state wage order that was attached, or was there a federal wage order attached? That's also answered in the record, and that's also answered by April Brown of MoDOT, where she testifies on volume 2, page 222 of the record. Quote, that is already calculated in the federal wage orders, and the state wage orders have all of those contract documents, apparently the prime contractor, prime contract is in books. Now, there was also much made of the fact that it wasn't physically attached, and I return back to the same paragraph that I read. Again, this is Exhibit 51, page 8, where it says the agreement documents not physically attached to the agreement will be provided to Hauler upon the written request of Hauler, or Hauler may review them in contractor's office during normal business hours. Hauler shall be bound and obligated to contractor by the terms and conditions of the agreement and the agreement documents, and Hauler assumes toward contractor all obligations, liabilities, and responsibility that contractor by the contract has assumed toward client. So the fact of the matter is the wage order included the federal prevailing wage required to be paid under Davis-Bacon, and I think that that argument is totally a red herring. Now let me address, as I indicated that I would, the question as to whether the federal government would go quietly into the night in the face of violations of Davis-Bacon. For that, I would turn the court's attention to Volume 1, pages 99 to 100 of the record where Jason Estes, a project manager for Gateway Constructors, which was the prime contractor, was asked a series of questions about that topic. Question, if you had not gathered these certifications, would Gateway Constructors have been paid by the state of Missouri? Answer, no. If Missouri did not require compliance with Davis-Bacon, could it have the federal funds for the project? Answer, no. If a subcontractor refused to pay Davis-Bacon prevailing wages, would the general contractor be able to continue with the project? Answer, no. Would you have authorized payment to such a subcontractor? Answer, we would have withheld payment trying to get compliance. We're now on page 100. Is that because if you don't get compliance of your subcontractor, you won't be paid? Answer, I won't be paid or we would be liable for that difference. Somehow that would be paid. That is the difference between what they represented that they were, what they were actually paying and what they were required to pay under Davis-Bacon and related acts. Now what does that mean, liable to whom? Certainly there's evidence that MoDOT was administering this interstate highway construction contract for the federal government, but that there was federal agency financing. There's addendums to the contract referencing all kinds of federal labor laws. It was very clear that there was federal money. There is a specific warning on Exhibit 52, which was the federal addendum regarding false statements made in terms of citing to federal law in terms of the consequences of making those violations of those false statements. The record is replete with references to the fact that everybody knows in an interstate highway contract you have to pay the prevailing wages. So I think a reasonable jury, which was actually being told that they could make inferences, that they could make inferences from the established evidence, they could use their common sense, it was very clear a reasonable jury could conclude that the federal government would have sued in the event that the amount of wages was falsely stated and that was less than the prevailing wage. Would it be correct, what we ought to be asking is would they have sued if Mr. Clark's statements had been truthful? Well, I think that a jury could conclude from the actual evidence in the record that that would have been the case. Because there was testimony that if he hadn't submitted the certifications he wouldn't have been paid. If he had submitted the certifications and they had reflected he was not paying the Davis-Bacon Act wages, then he would have been held to account by MoDOT. I think it's a reasonable inference from the evidence that was actually there that in the case we have here where he lied, that the general contractor would have been held liable. It was not directly answered by whom, but when you look at the record as a whole and applying your common sense with all the reference to the consequences of not following federal labor laws, including falsely certifying wages that are paid, a reasonable jury could have concluded that they would have been sued by the federal government. I would turn the court's attention to its decision in Turner cited in the brief. And I think Turner gives us some direction in terms of how to look at some of these issues. Now I think the thrust of the appellant's argument is that there was no direct proof in the record that there was some federal official in a federal agency who actually would have made a decision. I would add parenthetically that of course the instructions told the jury that the statement doesn't need to be made directly to the federal government and in fact if it's made to MoDOT, which is administering the contract and as a matter of law that's within the jurisdiction of the United States. But I think Turner illuminates that I'm looking at particular on page 663 of this court's opinion when this court discusses a materiality case in the third circuit. And I'm going to read this passage. The third circuit posed the question presented as follows. Whether the test for materiality necessarily requires that a false statement be capable of influencing an actual particular decision of the agency at issue or whether the test requires only that a statement be of a type that would naturally tend to influence a reasonable decision making agency in the abstract. This court then went on to find that the standard set forth in Godin, the Supreme Court case upon which the seventh circuit pattern instruction is largely based in finding that the test is really the government in a 1001 prosecution had to show that an actual particular decision of the agency at issue was in play or point to what that actual decision would be. So the standard seems to be whether it would have a natural tendency to influence a reasonable decision making agency and I think in light of what I have said it's very clear that that would impact Department of Labor, Federal Highway Administration and all the other federal agencies. So spell this out regarding count 10 which is the certification of compliance with state labor laws given to a state official after all the contract has been done and paid for I assume. Trace that to influencing the federal government for me. Well, I will candidly say our argument on count 10 is not nearly as strong as counts 1 through 9. I can only say as to that the subject matter of count 10, the affidavit was to the effect that prevailing wages were in fact paid on the project when they were not. I think given the fact that the Missouri Department of Transportation was acting on its behalf and the federal government in that this was a federally aided interstate highway contract, I think that that is a sufficient nexus, but that's not nearly as strong an argument I would concede as our arguments with respect to the actual wage certifications which were made in real time. Why are they different? Because of the timing? Because of the timing. These wage certifications were submitted in real time. Those were the basis upon which Clark Trucking was paid. And there was testimony in the record both by MoDOT and by Gateway Constructors that these certifications were actually examined. They were looked at. There was a comparison made to the prevailing wage on the project. As a matter of fact, April Brown testified that she would make visits onto the job site and randomly stop drivers and ask the drivers questions about their wage package and the like. So there was no question about the fact on a contemporary basis in real time these documents were what got these drivers paid. I would also point out on this materiality business, in terms of the actual jury instruction, what's interesting is that the jury was not actually instructed that a federal official would have to have capacity to mislead a federal official. The jury is, and I'm looking now at volume 4, pages 48 and 49 of the transcript where the district court instructs the jury, the jury is instructed on page 49, quote, the statement need not be made directly to a United States agency. If made to a local entity administering a totally or partially federally funded program, then such a statement may also be within the jurisdiction of a federal agency. What the court had instructed the government is material if it is capable of influencing the actions of the body or agency. The government is not required to prove that the statement actually influenced the body or agency. So nowhere in there was the jury instructed that they would have to find it would have actually influenced the actions or body of any federal agency. Jury could reasonably have believed under these instructions that it was being told that if the statements were such on an objective basis that it could have had the capacity to influence the actions and body of the Missouri Department of Transportation was administering this contract on behalf of the federal government, that the jury could have found the reckless degree of materiality. And I think that interpretation actually finds some support in this court's decision in Turner, which I referenced a moment ago. And in that decision, the court in turn referenced the Supreme Court case in Godin, and the formulation there, which is very close to the pattern instruction, must have a natural tendency to influence or be capable of influencing the decision of the decision-making body to which it was addressed. I submit to the court what that means is that in this particular case, given the Supreme Court's opinion quoted by this court and Turner and the instructions, that we only had to show it had the capacity to mislead the Missouri Department of Transportation, which was acting on behalf of the federal government in administering this contract. We briefed the other issues, restitution adequately in our brief. Let me just spend a moment, if I could, Mr. Eppert, with you on restitution. It appears odd to me that the government charged nine weeks on a project that took many weeks, months, years. And so you seek restitution for alleged victims, a position the probation department you caused to turn around. Correct. And you didn't want to get restitution if the victim is the government? No, we asked for restitution. Oh, no, but you only indicted for nine weeks. We indicted for nine specific certifications. That's correct. You had certifications through the whole project. That is absolutely correct. We did not want to over-try this case. I think it's sufficient. You mean that, well, restitution has got to be connected to the underlying. You don't have to be limited to counts, right, in restitution? That is absolutely correct. And I should say the amount is not in question because they're not challenging the calculation. We submitted a calculation. What's an issue is whether or not the drivers who were not paid the prevailing wage under Davis-Bacon, whether or not they think they could be victims under the act. But they did not challenge the calculation before that appears in the pre-sentence report. And there's extensive testimony regarding the charts. But does that restitution reflect the underpayment for that nine-week period? It reflects the underpayment throughout the whole period of the contract. That is correct. And we have drivers who testified they weren't victims, right? There were drivers who testified that they got paid what they were told by Pat Clark that he would pay them when he asked them, why am I not getting paid the prevailing wage? And that was a subject of the sentencing. And Judge Herndon said that you can't have a side agreement to circumvent federal labor laws. And so therefore the fact that the drivers testified I'm not a victim because he treated me fairly and he paid me what he said he was going to pay me, the fact that they were not paid the prevailing wage, Judge Herndon said that they weren't paid what the federal government intended them to pay, saw that as directly related and ordered a restitution amount based on the chart that was submitted into evidence for all of the drivers. So let me just follow up to make sure I understand correctly. So they were asked, so it suggests in the testimony that some of them were aware of the prevailing wage of $35. That is correct. They asked him directly why they weren't being paid that. That is correct. And he said you would just, you would go with, I don't know exactly his response, but he basically said no, it's $15. His response, and it's essentially, and I'm paraphrasing, but it is what it is. This is what you're going to get paid. Thank you. Thank you, Mr. Burkus. Just a couple of quick points if time allows. Counsel decided a bunch of testimony from April Brown. That's not in their brief. We couldn't find it sitting down. I'm sorry, but I'm not prepared to respond to that. On count 10, our point is they have to tie this specific statement to the federal government. It doesn't have to be to a specific person in the federal government. They don't have to show actual influence. Counsel did a good job knocking down a bunch of arguments we're not making. Our point is that they have to show the federal government's interest in this particular statement. And to say that it's within the jurisdiction of the federal government and it's about a subject that the federal government may care about doesn't cut it. If people are talking on the street and they happen to be on a construction site or a private email is not going to do it, they have to tie this statement to the federal government. If we were to set aside count 10 and affirm on counts 1 through 9, what effect would that have on the sentence and its financial terms? The sentence would have to be recalculated, and I think he served most of it at this point, so we think he'd be set free. Why would it have to be recalculated? I mean, in terms of, would it have changed the guideline calculation? If the guideline calculation was based in part on loss, counts 1 through 9 relate solely to David Addison. Count 10 is the only count that relates to the other 21. Yeah, but, well, no. The wage certifications, those documents apply to everybody, right, to all the drivers. There are other drivers listed, but the way those were charged relates only to David Addison. Yeah, but it's the whole course of conduct. I mean, the judge, there's no way the judge is going to say we're only going to treat this as a violation for David Addison in terms of sentencing and calculating loss. I take your point. We might dispute that on remand, but... So the bottom line is you just haven't recalculated his criminal offense level without count 10, correct? Yes, that's right. And how that calculation would come out, I guess it's an interesting question. I'm not quite sure what the answer is, but we think, at the very least, we think restitution for anyone other than David Addison is off the table if count 10 is reversed and counts 1 through 9 are affirmed. And I have one more thought I see my red lights on. The last thought I want to leave the court with, if I can, is that the restitution they're asking for is unprecedented. They say this in their brief, I believe, at page 29. They're not aware of any case that's approved restitution in this way under these circumstances in the context of the Davis-Pagan Act. And an affirmance here would set a dangerous precedent that I would urge the court not to set on that issue. I'd like to thank the court for its time. Thank you, Mr. Burgess. Thank you, Mr. Everett. Mr. Burgess, you have the additional thanks of the court for accepting this appointment. You're representing Mr. Clark. Is that Mr. I recognize you're on the brief, and you also have the thanks of the court for aiding in the representation of Mr. Clark. Thank you very much. The case is taken under advisement.